FILED

AUG 2 3 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
GILBERT P. HYATT,                                    )
                                                     )
        Plaintiff,                                   )
                                                     )  ˙
        v.                                           )        Civil Action No. 09-1864 (RCL)
                                                     )
MICHELLE K. LEE,                                     )        FILED UNDER SEAL
                                                     )
        Under Secretary of Commerce                  )
        for Intellectual Property and                )
        Director of the United States                )
        Patent and Trademark Office,                 )
                                                     )
        Defendant.                                   )
                                                     )
_____)

## MEMORANDUM OPINION

This case relates to patent application 08/456,398 (the '398 application) and is brought in accordance with 35 U.S.C. § 145. The parties have filed cross motions for partial or complete summary judgment. For the reasons specified below, plaintiff's motion is denied and defendant's motion is granted in part and denied in part. Additionally, this case is similar to several other § 145 claims brought by the same plaintiff including cases 03-cv-901, 05-cv-2310, 09-cv-1869, and 09-cv-1872 in front of this Court. This opinion should be read in conjunction with the memorandum opinions in those cases.

## I.    BACKGROUND

In 1984, Mr. Hyatt filed patent application 06/663,094 (the '094 application) with the United States Patent and Trademark Office (USPTO) seeking a patent for "improved image

1

processing architecture." A2.[1] In 1988, the USPTO found a number of the claims contained in the '094 application patentable, but Mr. Hyatt did not pay the requisite fees to obtain a patent on those claims. Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. n.4, ECF No. 48-1. Instead, Mr. Hyatt filed a continuing patent application, 07/289,355 (the '355 application), for a similar image processing system in 1988. *Id.* at 6; A2. In 1995, Mr. Hyatt filed the present application, 08/456,398 (the '398 application). Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 1, 6. The '398 application has the same specification text as the '094 application but has different claims. *Id.* at 6.

The '398 application originally had 20 claims. A578-661. Mr. Hyatt canceled those claims and added 94 new claims. A674-696. He later canceled 92 of those claims and added nearly 200 claims. A819-821. The process of adding and amending claims continued until, in 2004, all of the 350 pending claims were rejected for lack of written description or due to anticipation. A1760-64, 1831-38.

Mr. Hyatt appealed to the Board of Patent Trials and Interferences (Board),[2] which affirmed some of the patent Examiner's rejections and reversed others. Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 9-10, ECF No. 46. The Board broke the claims into 12 "tabular issues," only some of which are relevant to the ongoing litigation. *Id.* The relevant claims are disputed with respect to written description under 35 U.S.C. § 112 and anticipation under 35 U.S.C. § 102. *Id.*

---

[1] Citations to the administrative record take the form of the letter "A" followed by the page number or numbers provided in the joint administrative record, ECF No. 65.
[2] The Board is now referred to as the Patent Trial and Appeal Board pursuant to the Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(j)(1), 125 Stat. 284, 290 (2011).

### a. Tabular Issue One

The first tabular issue, claims 299-302, and 439, discusses a geometric transform circuit, a coordinate transform circuit, and an output circuit. *Id.* at 14; A5641-42. The portion of the specification cited as support for these circuits explains, "[g]eometric processor 111D can rotate, translate, expand, compress, 3D process, warp, and otherwise geometrically process the image stored in image memory 111 C to provide the geometrically processed output image." A5642. The Examiner's, and Board's, position was that this does not provide written support for "the recited [ ] coordinate transform circuit, let alone as a coordinate transform circuit that is separate from the geometric transform circuit and connected in common therewith to the output circuit." A5642-43. The Board noted that Mr. Hyatt did provide a new argument inconsistent with the position in an earlier brief, but that the argument was belated and not entitled to any consideration. *Id.*

### b. Tabular Issue Two

The second tabular issue relates to claims grouped to claim 117,[3] which recites:

generating graphics information;

generating data compressed textured image information;

generating data decompressed textured image information in response to the data compressed textured image information;

generating overlaid image information by overlaying in response to the data decompressed textured image information and in response to the graphics information;

generating warping information; and

generating warped overlaid image information by warping the overlaid image information in response to the warping information.

---

[3] These are claims 117, 119, 126, 138, 455 and 455-463. Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 19.

A5643. The Examiner and Board found these claims lacked written support as to the second and third steps, applying data compression to textured image information. A5644-46. Additionally, the Board noted that Mr. Hyatt did not challenge this grouping of claims. *Id.* As this litigation has continued, the parties have disputed if the specification would teach one skilled in the art the processing of video images or simply only still images. *See* Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 21-26.

### c. **Tabular Issue Seven**

The next tabular issue relevant to this litigation is the seventh, comprising claims 174, 279, 280, 282, 285, 287-88, 290-92, 294-96, 298, 304, 310-12, 392, 378-80, 382, 437, 467-69 and 471. *Id.* at 26. These claims relate to coarse and fine searching for features of interest. A5655-56. The Board affirmed these rejections, finding the specification does not teach coarse and fine searching for features of interest, though it does speak of coarse and fine image alignment. A5656-60. Though the Board refined its position on rehearing, it ultimately found the claims lacked written support for the aforementioned reasons. A5846-47. As in other instances it found some of Mr. Hyatt's arguments belated and not entitled to consideration. *Id.*

### d. **"Product" Claims**

The Board also found a large number of "product" claims lacked written description support. A5666-69. The Board noted that Mr. Hyatt failed to identify anything "that is made *as a step of the process* collectively recited by each rejected claim and its parent claim." A5668. In this litigation Mr. Hyatt has produced an expert report that claims the '398 application discusses a great number of products. Suppl. Expert Report of Brad Hite Regarding Patentability of U.S. Appl. Serial No. 08/456,398 at 29, ECF No. 46-4. Defendant argues both that one skilled in the art would not consider many of those examples to be products and also that the examples are

legally insufficient to demarcate the bounds of the claimed invention. Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 24-27.

### e. **Anticipation**

Finally, the Board addressed several claims the Examiner found anticipated by prior art. While the prior art varied from claim to claim, the Board noted that Mr. Hyatt's arguments often faulted the prior art for not using the same terms Mr. Hyatt utilized. A5672. It further notes that "most of [Mr. Hyatt's] arguments against the rejections consist of conclusions that lack any supporting analysis." *Id.* At issue in these motions are claims rejected for anticipation by Patent No. 4,520,506 (Chan), 4,271,476 (Lotspiech), and 4,541,012 (Tescher). A5670-71; Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 41-45.

## II.    **LEGAL STANDARDS**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In making a summary judgment determination, the court must believe the evidence of the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "the mere existence of a scintilla of evidence in support of the non-moving party" is insufficient to create a genuine dispute of material fact. *Id.* at 252. Instead, evidence must exist on which the jury could reasonably find for the non-moving party. *Id.*

Patent applications must include a written description of the claimed invention. 35 U.S.C. § 112. The Federal Circuit has explained "[t]he purpose of the 'written description' requirement

is broader than to merely explain how to 'make and use'; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). The rationale for the written description requirement is clear:

> '[A] patent is not a hunting license. It is not a reward for the search, but compensation for its successful conclusion.' Requiring a written description of the invention limits patent protection to those who actually perform the difficult work of 'invention'—that is, conceive of the complete and final invention with all its claimed limitations—and disclose the fruits of that effort to the public. . . . It is part of the *quid pro quo* of the patent grant and ensures that the public receives a meaningful disclosure in exchange for being excluded from practicing an invention for a period of time.

*Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353 (Fed. Cir. 2010) (internal citations omitted). Put another way, "[t]he essence of the written description requirement is that a patent applicant, as part of the bargain with the public, must describe his or her invention so that the public will know what it is and that he or she has truly made the claimed invention." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298 (Fed. Cir. 2014).

Whether or not there is sufficient written description is ultimately one of fact. *See GlaxoSmithKline LLC v. Banner Pharmacaps, Inc.*, 744 F.3d 725, 729 (Fed. Cir. 2014). However, it is nonetheless amenable to summary judgment. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) ("Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party.").

As an initial matter, the lens through which we examine claims for written description support is of one skilled in the art at the time of the claimed invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time

of the invention, i.e., as of the effective filing date of the patent application."). Section 112's twin requirements, of (1) describing the manner and process of making and using the full scope of the invention, and (2) describing the invention sufficiently to convey the patentee had possession of the claimed invention, are viewed in this same light and "usually rise and fall together." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005). Here, with respect to the "time of the claimed invention," given that the '398 application claims priority to the '094 application, the Court uses the '094 application's filing date: 1984.

In determining if there is sufficient written description, courts do not use bright-line rules. *Ariad*, 598 F.3d at 1351. We are not without basic principles or precedents however. As noted above, in general "the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* This does not require an applicant to detail each and every instantiation of a claimed invention. *Id.* at 1352 ("[T]he description requirement does not demand any particular form of disclosure . . . or that the specification recite the claimed invention *in haec verba*."). That no *form* is demanded does not mean no *substance* is demanded though, as USPTO guidelines, adopted by the court, require "disclosure of sufficiently detailed, relevant identifying characteristics . . . i.e., complete or partial structure, other physical and/or chemical properties, functional characteristics when coupled with a known or disclosed correlation between function and structure, or some combination of such characteristics." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002). To provide written description for a genus, "[o]ne needs to show that one has truly invented the genus, i.e., that one has conceived and described sufficient representative species encompassing the breadth of the genus. Otherwise, one has only a research

plan, leaving it to others to explore the unknown contours of the claimed genus." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d at 1300.

While the doctrines are different, determining if there is sufficient written description support for a broadly claimed invention can be "analogous to enablement of a genus under § 112, ¶ 1, by showing the enablement of a representative number of species within the genus." *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1569 (Fed. Cir. 1997); *see also Kennecott Corp. v. Kyocera Intern., Inc.*, 835 F.2d 1419, 1421 (Fed. Cir. 1987) ("These requirements may be viewed separately, but they are intertwined."). One such case addressing this "genus and representative species" concept is *Application of Angstadt*, 537 F.2d 498 (C.C.P.A. 1976). There, the claimed invention was using a hexaalkylphosphoramide and a transition metal salt to catalyze the oxidation of secondary or tertiary alkylaromatic hydrocarbons to form hydroperoxides. *Id.* at 503. The applicant did not disclose every catalyst that could work, as that would necessitate thousands of examples. Instead, they provided 40 working examples. *Id.* at 502-03. The Federal Circuit explained that, "[s]ince appellants have supplied the list of catalysts and have taught how to make and how to use them, we believe that the experimentation required to determine which catalysts will produce hydroperoxides would not be undue and certainly would not 'require ingenuity beyond that to be expected of one of ordinary skill in the art.'" *Id.* at 503 (quoting *Fields v. Conover*, 443 F.2d 1386, 1390-91 (C.C.P.A. 1971)).

With regards to the anticipation claims, the law at issue in this case is not in dispute. To be patentable, a claim must not have been "anticipated" under 35 U.S.C. § 102. A claim has been anticipated if all of its limitation are disclosed, either explicitly or inherently, in a prior art reference. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). The question of inherent disclosure is a factual one. *Id.*

### III. CLAIMS REJECTED FOR LACK OF WRITTEN DESCRIPTION SUPPORT

As noted, the bulk of the claims at issue in this case were rejected as unpatentable for lack of written description under 35 U.S.C. § 112. These include a group of "product" claims along with claims from other tabular issues.

#### a. Product Claims

The disputed product claims are 119, 130, 137, 142, 149, 154, 155, 160, 161, 167, 173, 178, 184, 185, 191, 196, 200, 204, 208, 212, 216, 220, 224, 228, 232, 234, 236, 240, 244, 248, 252, 256, 260, 264, 268, 272, 276, 280, 284, 286, 288, 292, 296, 307-316, 318-320, 322-323, 325-326, 386, 392, 396-398, and 403. These claims generally have the following form: "A process as set forth in claim $X$, further comprising the act of making a product." This is not the only form these claims take, but is emblematic.[4] For example, claim 130 recites "a process as set forth in claim 129, further comprising the act of making a product in response to the process set forth in claim 129." A4406. Claim 312 reads "A process as set forth in claim 469 further comprising the

---

[4] Following are example forms of the claims in question:

Claim 119: "A process as set forth in claim 117, further comprising the act of making a product." A4401;

Claim 130: "A process as set forth in claim 129, further comprising the act of making a product in response to the process set forth in claim 129." A4406;

Claim 228: "A process as set forth in claim 227, further comprising the act of making a product in response to the geometric transformed video information." A4437;

Claim 312: "A process as set forth in claim 469, further comprising the acts of:
making a first product in response to the process;
making a second product in response to the first product; and
making a third product in response to the second product." A4463;

Claim 315: "A process as set forth in claim 195, further comprising the act of making a signal product." A4463

acts of: making a first product in response to the process; making a second product in response to the first product; and making a third product in response to the second product." A4463.

At multiple points the parties disagree about whether Mr. Hyatt has identified any products within the disputed claims. For example, the parties dispute if one skilled in the art at the time would understand generating signals as being a product. Mem. P. & A. Supp. Def.'s Opp'n Gilbert P. Hyatt's Mot. Summ. J. 24, ECF No. 52. The Court finds these issues not amenable to summary judgment as there are genuine issues of material fact as to if and how Mr. Hyatt's examples would have been understood at the time.

However, as the defendant's briefs and applicable law make clear, this is not the end of the inquiry. While there is genuine factual dispute over Mr. Hyatt's specific examples, the Court finds the question of whether or not Mr. Hyatt's examples are sufficient to support the full scope of his claimed inventions is indeed amenable to summary judgment. Accordingly, for all of Mr. Hyatt's product claims,[5] the Court will determine if Mr. Hyatt's specification provides written description support for the full scope of the claims.

The patent Examiner found that these product claims all lacked sufficient written description, a finding that was affirmed by the Board. A5666-71. During a patent examination, claims are given their "broadest reasonable interpretation." *In re Am. Acad. Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). Mr. Hyatt could have amended the claim language, as indicated by his amending several other claims. He chose not to do so and argued to the Board that the image processing system itself was an example of the product in question. A4251-4257. The Board rejected that argument, explaining that Mr. Hyatt "should have explained, for each rejected

---

[5] That is, claims 119, 130, 137, 142, 149, 154, 155, 160, 161, 167, 173, 178, 184, 185, 191, 196, 200, 204, 208, 212, 216, 220, 224, 228, 232, 234, 236, 240, 244, 248, 252, 256, 260, 264, 268, 272, 276, 280, 284, 286, 288, 292, 296, 307-316, 318-320, 322-323, 325-326, 386, 392, 396-398, and 403.

'product' claim, exactly where the application (including any material allegedly incorporated by reference) provides descriptive support for each 'making' a 'product' step as well as for each step recited in the parent claim." A5669.

In this Court, Mr. Hyatt has argued that there are several products identified in the specification that serve as sufficient examples for these product claims. These products include:

> (1) photographs, (2) a computer aided design (CAD) product, (3) a composite video signal, (4) a recorded video tape, (5) a recorded video disk, (6) a digital recorded video disk, (7) robots, guided weapons, satellites, aircraft and land vehicles, (8) a video disk storing an arcade game, (9) a video disk storing a flight simulator application and (10) a video disk or videotape storing architectural information.[6]

Supplemental Expert Report of Brad Hite Regarding Patentability of U.S. Application Serial No. 08/456,398 at 29 (internal citations omitted). While Mr. Hyatt provides several examples of possible products for the claims in question, defendant has argued that these claims are nonetheless "unbounded" and "simply recite . . . making 'a thing.'" Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 25. Defendant further notes that the examples Mr. Hyatt argues are just that, examples—they do not necessarily define the outer bounds of his claims. *Id.* at 27.

As an initial matter, Mr. Hyatt is correct in asserting that these claims are, in at least some sense, bound by the broader application. He notes, for example, that the claims in question are dependent claims and, as such, "are necessarily narrower than the parent claims from which they depend." Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 38; *see also* 35 U.S.C. § 112(d). The dependent product claims do indeed rely on independent claims, as is evidenced by their very text. *See* A4401-87. Contrary to Mr. Hyatt's conclusion though, this does not necessarily make the claims acceptably narrow. This is because Mr. Hyatt's language in his dependent claims is

---

[6] While Mr. Hyatt's expert report in this case, quoted here, includes "robots, guided weapons, satellites," and "aircraft and land vehicles" as example products, Mr. Hyatt does not include these in his motion for summary judgment. Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 38-39. He later states the specification provides a guidance system for such technologies. Pl. Gilbert P. Hyatt's Reply Supp. Mot. Summ. J. 21, ECF No. 60.

broad, using "product," "game product," or a similar term instead of something more specific. *Id.* Despite dispute between the parties, the Court does not doubt the existence of *some* outer bound— the question is whether there is sufficient written description for the full scope of what is being claimed. Given the breadth of the language in the claims, the Court does not believe Mr. Hyatt's stated limitations are sufficient to obviate defendant's argument for overbreadth.

Mr. Hyatt goes on to argue that his examples, such as the video signal or video disk storing an arcade game, satisfy the written description requirement as they describe "a broad range of widely disparate products." Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 31. As Mr. Hyatt provides examples rather than specifies the precise contours of his invention, the Court sees this as analogous to determining if the examples are representative species sufficient to disclose a genus. *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, 645 F.3d 1336, 1352 (Fed. Cir. 2011). Assuming, arguendo, that each of these has sufficient written description, the Court finds the genus containing species ranging from rotating images to guidance systems for "Star Wars R2D2 type robots," A494, is incredibly large and may include everything from virtual reality to certain forms of machine learning. The Court sees nothing in the specification that would show one of ordinary skill in the art that Mr. Hyatt possessed the full scope of these claims, nor that he provided sufficient detail to demarcate what he was claiming.

In making this determination the Court looks to the specification of the '398 application. *Ariad*, 598 F.3d at 1351 ("[T]he hallmark of written description is disclosure . . . the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art."). The specification discusses, among other things, an experimental system, A240-373, that Mr. Hyatt explains "demonstrate[s] many of the features of the present invention." A31. Screenshots of a demonstration of the device are below:



13







Screenshots of Experimental System, ECF. No. 52-2.

The system shows the ability of a user to digitally manipulate an image of an aircraft. The image can wrap around the screen, the user can pan, etc. In addition to the experimental system, the specification discusses several ways of manipulating or processing images, such as rotation and translation, e.g. A81-90, and zooming, e.g. A106-110. However, when the Court looks at the '398 application—including the experimental system—and the product claims in question, it does not believe one of ordinary skill in the art would understand Mr. Hyatt to be in possession of the full scope of his claims. Language such as "a process as set forth in claim $X$, further comprising the act of making a product" may be bounded by its context, but—as Mr. Hyatt himself admits— here the examples are incredibly wide ranging, covering everything from merged photographs to robots. Accordingly, there must be written description support for not just *some* product or image

processing, but for the full range of products that may fall under the claims. The application cannot reasonably be read as teaching one skilled in the art the full scope of downstream image processing techniques that must necessarily be included for the claims to reach R2D2 type systems. This is no less true with respect to claims that have limiting terms such as "display" or "signal." While these claims have a narrower aperture, the language of, for example, claim 309,[7] is still broader than anything taught in the specification as its language covers any derivative signal product. *See AbbVie*, 759 F.3d at 1300 ("[I]f the disclosed species only abide in a corner of the genus, one has not described the genus sufficiently to show that the inventor invented, or had possession of, the genus. He only described a portion of it. That is the case here.").

It is not enough that the specification or applicant proclaim something to be invented, for disclosure to be sufficient it must "reasonably convey[ ] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351. Here, in addition to the disclosed species covering only a portion of the claimed genus, there is ambiguity as to the contours of what Mr. Hyatt is claiming. Though not without its limitations, *AbbVie*'s analogy to plots of land is useful here. It explains:

> One describes a plot of land by its furthest coordinates, in effect drawing a perimeter fence around it. That may be akin to the function of patent claims to particularly point out and distinctly circumscribe the outer boundaries of a claimed invention. With the written description of a genus, however, merely drawing a fence around a perceived genus is not a description of the genus. One needs to show that one has truly invented the genus, i.e., that one has conceived and described sufficient representative species encompassing the breadth of the genus.

*AbbVie*, 759 F.3d at 1300. Here, it is clear that the examples do not encompass the claim's territory. Further, it is not actually clear what the outer boundaries of the claimed invention are,

---

[7] Claim 309 reads: "[a] process as set forth in claim 466, further comprising the acts of: making a display product in response to the process; and making a second product in response to the display product." A4463. Even if the specification teaches a valid "display product" this claim still covers any display product made in response to claim 466 as well as seemingly all downstream products made in response to the first product.

but there is no need to specify the precise delimitation of the claims as the Court finds the territory defined by examples so disparate necessarily creates an area broader than that taught by the specification. That is to say, while Mr. Hyatt's application may well disclose *something*, it does not disclose the *full scope* of his product claims. *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332 (Fed. Cir. 2013).

### b. **Other Claims Rejected for Lack of Written Description**

The Board rejected several other claims for lack of written description, identified as tabular issues one, two, and seven, above. Defendant groups these into two categories in their motion, a structure Mr. Hyatt adopts for purposes of his opposition. Pl. Gilbert P. Hyatt's Opp'n Def.'s Mot. Partial Summ. J. 9, ECF No. 57. These categories are claims relating to 1) "coarse and fine searching for a feature of interest" and 2) claims that recite "processing of video information." *Id.*

The Court finds that there are genuine issues of material fact with respect to both of these groups of claims. Regarding coarse and fine searching for a feature of interest, defendant argues, among other things, that while the specification describes human controlled searching, it does not describe automated searching. Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 20. This argument is incredibly similar to that in *Bilstad v. Wakalopus*, 386 F.3d 1116 (Fed. Cir. 2004). There, a claim discussed manipulating an object in a "plurality" of directions, but only provided written description for manipulating the object in a limited number of directions. *Id.* The court held that there was a factual question presented: if the disclosure of limited object manipulation would reasonably convey to one skilled in the art manipulation in a plurality of directions. *Id.* at 1126. The Court now similarly finds that summary judgment is not proper in this context given the genuine underlying dispute on what the specification would have conveyed to one skilled in

the art—it may be that one skilled in the art would understand the description of human searching as disclosing the full range of searching required by the claim.

Similarly, with regard to claims relating to processing video information, there is a genuine dispute as to whether one skilled in the art would recognize the specification as teaching the use of video, as opposed to still image processing. *See generally*, Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 22-23; Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 19. [8]

## IV.    CLAIMS REJECTED AS ANTICIPATED

### a.  Anticipation by Chan

The Board found that Chan anticipated claim 168. A5670. Claim 168 reads:

A system comprising:
database memory means for storing data compressed image information;

means for storing object database memory management information;

means for generating data decompressed image information by data decompressing in response to the object database memory management information and in response to the data compressed image information; and

means for generating location information representing location of a feature of interest in response to the data decompressed image information.

A5677-78. Chan discloses a moving map for an aircraft that adjusts based on the aircraft's location and direction. Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 29-30. This map displays features of interest. *Id.*   Mr. Hyatt, among other things, distinguishes between "location information" and the "location of a feature of interest" in opposition to the feature of interest itself. Pl. Gilbert P. Hyatt's Opp'n Def.'s Mot. Partial Summ. J. 38. He further argues that claim 168

---

[8] Defendant did not move for summary judgement with respect to several claims in the seventh tabular issue, which generally relates to searching or identifying features of interest. These are claims 279, 282, 285, 287, 290, 304, 378, 379, 382, 437, 467, and 468. Similarly, defendant did not move for summary judgment on claim 117 from the second tabular issue, discussed in Part I, above. The Court finds that—like those claims for which defendant did move for summary judgment—there are genuine issues of material fact to be resolved at trial for the reasons stated herein and further articulated by the Board.

generates the location information "in response to data decompressed image information" where Chan does not. *Id.* at 39. Defendant argues that Chan discloses compression and decompression with respect to the map display, therefore meeting the language of claim 168. Def.'s Reply Supp. Mot. Partial Summ. J. 19-21, ECF No. 62. Given that this issue arises in the context of cross motions for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Through that lens, and given the competing expert statements, the Court finds the question of whether or not claim 168 is anticipated by Chan a factual one to be resolved at trial.

### b. Anticipation by Lotspiech

The Board found that Lotspiech anticipated claims 186 and 195. Lotspiech discloses a system for rotating the scan format of a digital image. A5681. Mr. Hyatt argues that "Lotspiech uses the phrase 'image rotation' as an abbreviated reference to 'rotation of the image scan direction,' which is different from rotation of the image itself." Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 44. Defendant argues that Lotspiech specifically requires and teaches image rotation. Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 32-33. Given the presence of competing expert claims as to what Lotspiech discloses, the Court finds the anticipation of claims 186 and 195 an issue of fact to be resolved at trial.

### c. Anticipation by Tescher

Finally, the Board also found claims 120-22 and 361 anticipated by Tescher. Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 44-45. Tescher discloses a video bandwidth reduction system. A5687. This system uses "interframe block differencing," *id.*, but Mr. Hyatt argues that Tescher only processes and stores fields—not frames—of video information. Mem. P. & A. Supp.

Gilbert P. Hyatt's Mot. Summ. J. 45. Though defendant did not address Mr. Hyatt's arguments that he is entitled to summary judgment, the Examiner specifically found that Tescher covered "an input circuit generating a sequence of *frames* of data compressed video information." A5044 (emphasis added). Similarly, though Mr. Hyatt concludes that Tescher does not provide "database memory," Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. 45, the Examiner understood Tescher to the contrary. A5045-46. Accordingly, the Court finds that the issue of anticipation with respects to claims 120-22 and 361 is one of fact to be resolved at trial.

## V. REQUEST TO WITHDRAW CLAIMS OR GRANT SUMMARY JUDGMENT TO SUCH CLAIMS

Mr. Hyatt states he withdrew the following claims from this litigation: 116, 118, 125, 175, 317, 321, 324, 393-395, 399-402, 404-406, 422-424, 428-431, and 443-451. Pl. Gilbert P. Hyatt's Opp'n Def.'s Mot. Partial Summ. J. 45. He further argues these claims are not properly before the Court. *Id.* ("[T]here is no case or controversy as to these withdrawn claims.").

The Court sees two avenues Mr. Hyatt could have used to properly withdraw claims, under Federal Rule of Civil Procedure (FRCP) 15 or 41. Pertinent portions of those rules read as follows:

Rule 15:
(a) Amendments Before Trial.
    (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
            (A) 21 days after serving it, or
            (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
    (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Rule 41:
(a) Voluntary Dismissal.
    (1) By the Plaintiff.

(A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

. . .

(2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.

Fed. R. Civ. P. 15, 41. In this instance, Mr. Hyatt included these claims in his complaint, filed in September 2009. Compl. ¶ 10, ECF. No. 5. Defendant's answer was filed in March 2010. Answer, ECF No. 19. Mr. Hyatt notified defendant he was withdrawing these claims in emails dated November 2013 and January 2014. Emails to Rhonda Fields from Aaron Panner, ECF No. 48-4. The Court learned of the withdrawn claims through the motions for summary judgment. Mr. Hyatt has not at any point requested the Court's leave to withdraw these claims or amend his complaint—he has only noted in a conclusory manner that he has withdrawn claims. *See, e.g.*, Mem. P. & A. Supp. Gilbert P. Hyatt's Mot. Summ. J. at n.15.

It is clear Mr. Hyatt has not withdrawn these claims with the Court's leave or by Court Order. Given the aforementioned timeline, he also did not withdraw the claims before the defendant filed his answer, FRCP 41(a)(1)(A)(i), or, per FRCP 15(a)(1)(A)-(B), within the 21 day deadline. Accordingly, for the claims to be properly withdrawn, Mr. Hyatt required the opposing party's written consent or stipulation. Fed. R. Civ. P. 15(a)(2), 41 (a)(1)(A)(ii). Given that defendant has moved for summary judgment on these claims, Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 36, it appears defendant has neither consented nor stipulated to remove these claims from the present action. They are thus not withdrawn from this case.

As the claims are properly in front of this Court, we now turn to the question of if they are amenable to summary judgment. The Board rejected all of these claims. Def.'s Reply Supp. Mot. Partial Summ. J. 23. Mr. Hyatt has explained that he is no longer challenging the rejection of these claims. *Id.*; Emails to Rhonda Fields from Aaron Panner. Given that defendant has moved for summary judgment affirming the Board's holdings, Def.'s Mem. P. & A. Supp. Mot. Partial Summ. J. 36; Def.'s Reply Supp. Mot. Partial Summ. J. 23-25, and Mr. Hyatt is not challenging those holdings, the Court sees no disputed factual issue to be resolved and grants defendant's motion for summary judgment with respect to these claims.

Put another way, the Court finds the only hurdle to granting summary judgment with respect to these claims was determining if the claims were properly before the Court. Given the foregoing analysis, they are indeed before the Court. Defendant is entitled to summary judgment on these claims because neither party is challenging the underlying Board decisions that defendant seeks to maintain.

## VI.  CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment will be granted in part and denied in part. Plaintiff's motion for summary judgment will be denied for the reasons stated herein and, for any claims not discussed above, due to disputed factual issues to be addressed at trial. A separate order consistent with this opinion will be issued on this date.

Signed this **23rd** day of August, 2016.

ROYCE C. LAMBERTH
United States District Judge

22