## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**GILBERT P. HYATT,**

*Plaintiff,*

**v.**

**ANDREI IANCU,**

*Defendant.*

**Case No. 1:05-cv-2310-RCL**
**Case No. 1:09-cv-1864-RCL**
**Case No. 1:09-cv-1869-RCL**
**Case No. 1:09-cv-1872-RCL**

## <u>MEMORANDUM OPINION</u>

Before the Court are two motions for litigation expenses — plaintiff Gilbert P. Hyatt's motion for attorneys' fees under 28 U.S.C. § 2412(b) (ECF No. 262)[1] and defendant Patent and Trademark Office's[2] (PTO) motion for expenses under 35 U.S.C. § 145 (ECF No. 261) — as well as Mr. Hyatt's motions to de-designate certain evidence as protected under a protective order (ECF Nos. 207 and 240).

Upon consideration of the motions and briefing thereon, the Court will grant in part and deny in part Mr. Hyatt's motion for fees, grant in part and deny in part the PTO's motion for expenses, and grant in part and deny in part Mr. Hyatt's motion to de-designate protected documents.

## I.   BACKGROUND

The Court refers readers to its discussion of the factual background to this long-running dispute between Mr. Hyatt and the PTO in two earlier opinions. *See Hyatt v. Iancu* ("*Hyatt*

---

[1] All docket citations refer to the docket in Case No. 1:05-cv-2310-RCL.

[2] The named defendant is Andrei Iancu, sued in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.  For convenience, the Court refers to the defendant as the PTO.

Merits"), 332 F. Supp. 3d 83 (D.D.C. 2018) and *Hyatt v. Iancu* ("*Hyatt Latches*"), 332 F. Supp. 3d

113 (D.D.C. 2018).  In brief, this case arises from hundreds of extraordinarily lengthy and complex

patent applications Mr. Hyatt filed in 1995, shortly before regulations implementing the Uruguay

Round of the General Agreement on Tariff and Trade went into effect.  *Hyatt Latches*, 332 F.

Supp. 3d at 123.  From 2003–12, the PTO suspended examination of the majority of Mr. Hyatt's

patent applications.  *Id.* at 124.  Ultimately, the PTO and the Patent Trial and Appeals Board[3]

denied some of Mr. Hyatt's claims in the four patents at issue here.  *Id.* at 125–27.

Mr. Hyatt sued the PTO under 35 U.S.C. § 145[4] — which allows a patent applicant to

challenge an adverse PTO decision in district court — seeking patents on four of his inventions.

The parties conducted discovery under a stipulated protective order.  *See* Stipulated Protective

Order (ECF No. 40).  After the Court denied cross-motions for summary judgment, the PTO moved

to dismiss these actions for prosecution latches.  *See* Def.'s Mot to Dismiss (ECF No. 91).  The

Court denied that motion, concluding that Mr. Hyatt neither unreasonably nor inexplicably delayed

the patent proceedings.  *Hyatt Latches*, 332 F. Supp. 3d at 138–39.  After a bench trial, the Court

ordered the PTO to issue a patent covering some, but not all, of the claims in Mr. Hyatt's patents.

*Hyatt Merits*, 33 F. Sup. 3d. at 112–13.

Mr. Hyatt and the PTO have both appealed from the Court's decisions.  *See Hyatt v. Iancu*,

No. 18-2390, et al. (Fed. Cir. argued Feb. 6, 2020).

---

[3] At the time, the Board was known as the Board of Patent Appeals and Interferences.  *See* Leahy–Smith America
Invents Act, Pub. L. No. 112-29, § 7(a), 125 Stat. 284, 313 (2011).

[4] At the time Mr. Hyatt filed these actions, § 145 designated the District of Columbia as the exclusive venue for § 145
actions; since 2011, the Eastern District of Virginia is the exclusive venue.  *See* America Invents Act § 9(a).

## II.   LEGAL STANDARDS

### A. Attorneys' Fees

On a motion for attorneys' fees, the movant bears the burden of showing its entitlement to fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the movant shows he is entitled to fees, the court must confirm that the fees are reasonable and disallow "excessive, redundant, or otherwise unnecessary charges." *Id.* at 433–34. The Court has broad discretion in determining what qualifies as a reasonable fee and how much to discount an unreasonable fee. *Washington All. of Tech. Workers v. Dep't of Homeland Sec.*, 857 F.3d 907, 910–11 (D.C. Cir. 2017). Fee matrices — most commonly the *Laffey* matrix — "provide[] a useful starting point" in determining whether a fee is reasonable. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015).

### B. Confidential Documents

Under Federal Rule of Civil Procedure 26(c), the Court may issue an order limiting discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." A party that designates evidence as confidential under a protective order must show good cause why the evidence should be protected. *See* Fed. R. Civ. P. 26(c)(1); *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). Under the protective order governing confidential materials in this action, the designating party bears the burden of establishing good cause to protect documents if the opposing party challenges its designation. *See* Stipulated Protective Order ¶ 16.

The court has broad discretion in issuing and shaping protective orders. *Aluminum Co. of Am. v. Dep't of Justice*, 444 F. Supp. 1342, 1347 (D.D.C. 1978).

## III.    ANALYSIS

### A. Mr. Hyatt's Motion for Attorneys' Fees

Under the American Rule, prevailing litigants generally may not collect attorneys' fees from their opponents. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). A prevailing party, however, may recover fees "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974). And a party that prevails against the United States may collect fees to the same extent that he could against a private litigant. 28 U.S.C. § 2412(b).

"[T]he underlying rationale of fee-shifting upon a showing of bad faith is punishment of the wrongdoer rather than compensation of the victim. For that reason, the standard for a finding of bad faith is stringent. . . . [A]ttorneys' fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand." *Nepera Chem., Inc. v. Sea-Land Serv., Inc.*, 794 F.2d 688, 702 (D.C. Cir. 1986). To invoke this exception to the American Rule, the prevailing party must demonstrate bad faith by clear and convincing evidence. *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015).

Mr. Hyatt prevailed on the issue of prosecution laches and is thus a prevailing party. He employs a shotgun approach in contending that the PTO acted in bad faith in litigating against him. He seeks fees principally based on PTO's delay in asserting its prosecution laches defense, PTO's delay in disclosing the identity of additional witnesses, PTO's failure to disclose which portions of the record it would rely upon at trial, and PTO's failure to disclose an email and an image in discovery.[5] Based on those allegations of bad faith, Mr. Hyatt asks the Court to award him fees

---

[5] Mr. Hyatt also argues that the PTO made other inappropriate changes to its argument during and after trial. The Court does not find that PTO changed its arguments on its theories of prosecution latches. Parties have room to maneuver in how they frame and present their properly noticed and preserved legal theories at trial. And strategic

relating to (1) compelling the PTO to disclose which parts of the administrative record it would rely upon at trial, (2) deposing witnesses, (3) preparing for trial, and (4) drafting Mr. Hyatt's proposed factual findings and conclusions of law.  Hyatt's Fees Br. 7–8 (ECF No. 262-1).

Mr. Hyatt has not produced clear and convincing evidence that the PTO litigated in bad faith by asserting a prosecution latches defense, delaying disclosure of its witnesses, or failing to disclose discoverable documents.

First, the PTO asserted its prosecution latches defense appropriately.  The Court granted the PTO leave to amend its answer to assert the prosecution latches defense, *see* Order, Apr. 10, 2017 (ECF No. 122), in order to efficiently resolve this dispute.  And the PTO supported that defense with a colorable argument.  That the Court rejected the PTO's argument does not render it frivolous.  Mr. Hyatt also argues that the PTO waited too long to assert its defense.  To be sure, "[t]he Court is sympathetic to [Mr. Hyatt's] argument that [the PTO] could and should have raised the issue of prosecution latches earlier."  Order 2, Nov. 22, 2016 (ECF No. 90).  But the Court permitted the PTO to raise the defense in the interest of judicial economy.  *See id.*; Order, Apr. 10, 2017.  The PTO did not act in bad faith by raising a defense that the Court wanted to hear.  Finally, Mr. Hyatt claims that the PTO gave the Court an ultimatum — allow the amendment or permit the PTO to deny the application for prosecution latches after trial.  Hyatt's Fees Br. 3.  The PTO, however, simply informed the Court and Mr. Hyatt about the practical consequences of denying leave to amend its answer.  The Court will not punish the PTO for taking an appropriate step to streamline the case's resolution.

---

behavior is not evidence of bad faith.  The Court rejects these allegations of bad faith because the PTO acted within the bounds of acceptable litigation behavior in how it framed its theory of the case.

Second, Mr. Hyatt has not produced clear and convincing evidence that the PTO failed to timely disclose rebuttal witnesses. The Court did not exclude those rebuttal witnesses from testifying before trial, implicitly acknowledging that they were properly noticed. Because the Court is not firmly convinced that the PTO improperly gave notice of its rebuttal witnesses, it will not find that the PTO acted in bad faith.

Third, Mr. Hyatt has not produced clear and convincing evidence linking the PTO's failure to disclose discoverable documents to the claims on which he prevailed. The withheld email concerned the agency's conduct not Mr. Hyatt's. Moreover, Mr. Hyatt has not given reason to believe that the agency acted in bad faith when it offered a weak but plausible argument as to why the email could not be disclosed. *See Hyatt v. PTO*, 346 F. Supp. 3d 141, 150–51 (D.D.C. 2018). To the extent that the PTO acted unreasonably, in forcing Mr. Hyatt to file a FOIA action before turning over an email, it has already paid for Mr. Hyatt's FOIA-related attorneys fees.

As to the PTO's failure to disclose which documents it would rely on at trial, Mr. Hyatt has shown by clear and convincing evidence that the PTO acted in bad faith. Mr. Hyatt served an interrogatory on the PTO asking it which documents in a nearly two-million-page administrative record it intended to rely on at trial. The PTO told him that the entire record would be relevant and maintained that position in opposing Mr. Hyatt's motion to compel. *See* PTO's Opp'n to Mot. to Compel 10–12 (ECF No. 143). No reasonable attorney expects to rely upon a record that — if printed — would dwarf the Washington Monument at a five-day bench trial. That PTO complied quickly with the Motion to Compel is irrelevant because Mr. Hyatt should never have been forced to file his motion. Indeed, the fact that the PTO could inform Mr. Hyatt which documents it intended to rely on within seven days of this Court's order suggests that its refusal stemmed from mere recalcitrance.

The Court will exercise its discretion to award attorneys' fees based on that incidence of bad faith litigation. But the Court will also tailor its fee award narrowly to punish the PTO only for its failure to adequately respond to Mr. Hyatt's interrogatory. The records Mr. Hyatt's attorneys submitted show that an attorney with 8–10 years of experience spent 7.9 hours on the motion to compel and related discovery issues; they also show that that attorneys with 11–15 years of experience spent 14.95 hours on those issues. *See* Grossman Decl. ¶¶ 3, 5, 7, Ex. 1 (ECF No. 263). The following table details the work for which the Court will award fees:

| Date | Timekeeper | Hours | Rate | Fee | Narrative |
|------|-----------|-------|------|-----|-----------|
| 6/23/2017 | DeLaquil | 0.50 | $483.00 | $241.50 | Edit and revise draft 30(b)(6) deposition notice; edit and revise draft motion to compel. |
| 6/23/2017 | Grossman | 0.50 | $410.00 | $205.00 | Attention to discovery disputes with Mr. Levine |
| 6/23/2017 | Levine | 4.70 | $483.00 | $2,270.10 | Draft correspondence to Government regarding motion to compel interrogatory responses and other discovery production; draft motion to compel; review changes from Mr. M. DeLaquil; review and revise motion to compel based upon same; discuss research issues concerning same with Mr. J. Nawrocki; [REDACTED]; review potential documents for use in motion to compel. |
| 6/24/2017 | Grossman | 1.00 | $410.00 | $410.00 | Attention to client communications regarding discovery; review and revise motion to compel. |
| 6/24/2017 | Levine | 0.25 | $483.00 | $120.75 | Correspond with client regarding discovery motion. |
| 6/25/2017 | Levine | 0.40 | $483.00 | $193.20 | Review and revise motion to compel based upon comments from client and Mr. Grossman. |

| 6/26/2017 | Grossman | 1.20 | $410.00 | $492.00 | Attention to discovery issues; discuss same with Mr. Levine; final review of motion to compel; attention to Rule 30(b) deposition notice. |
|---|---|---|---|---|---|
| 6/30/2017 | Grossman | 4.00 | $410.00 | $1,640.00 | Attention to discovery issues and communications with PTO regarding same; participate in call with client; discuss timing and strategy issues with Messrs. DeLaquil and Levine; [REDACTED]; review materials provided by client; review response to motion to compel filed by PTO and discuss same with Mr. Levine. |
| 6/30/2017 | Levine | 3.50 | $483.00 | $1,690.50 | Review PTO Opposition to Hyatt Motion to Compel; research issues related to the same; discuss same with Mr. Grossman; draft email regarding the same; correspond with PTO regarding discovery issues; [REDACTED]; discuss same with Mr. DeLaquil; discuss deposition planning with Mr. DeLaquil and Mr. Grossman; draft correspondence relating thereto. |
| 7/1/2017 | Levine | 4.80 | $483.00 | $2,318.40 | Draft reply in support of motion to compel; review PTO opposition brief. |
| 7/2/2017 | Grossman | 1.20 | $410.00 | $492.00 | Review and revise reply in support of motion to compel. |
| 7/2/2017 | Levine | 0.80 | $483.00 | $386.40 | Review changes from Mr. Grossman to Reply brief in support of motion to compel |

*Id.* at Ex. 1. The Court notes that some of the entries are block billed; as all of the entries relate to

discovery disputes that occurred at the same time as the motion to compel, however, the Court will

not reduce its fee award. *See Tridico v. District of Columbia*, 235 F. Supp. 3d 100, 110 (D.D.C.

2017) (declining to discount fees due to limited block billing).

Accepting as reasonable the *Laffey* Matrix fees for attorneys with the same experience as Mr. Hyatt's counsel, the Court will award Mr. Hyatt $10,459.85 in attorneys' fees. [6]

## B. The PTO's Motion for Expenses

When a patent applicant bypasses Federal Circuit review of a decision of the Patent Trial and Appeal Board and sues directly in district court, he obtains the ability to introduce new evidence and the right to a *de novo* determination of the merits of his application. *Kappos v. Hyatt*, 566 U.S. 431, 434–36 (2012). But those benefits come with a cost: a plaintiff suing under § 145 must pay "[a]ll the expenses of the proceedings." 35 U.S.C. § 145.

The question here is whether "expenses" include expert fees. The Supreme Court construed § 145 to exclude attorneys' fees in *Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 372 (2019), holding that the provision's language was not express enough to overcome the American Rule's presumption against fee shifting. And a similar presumption applies to witness fees. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86–87 (1991) (holding that a court may not award expert fees "absent contract or explicit statutory authority to the contrary" and refusing to "lightly infer that Congress has repealed [statutory caps on witness fees] . . . through . . . any . . . provision not referring explicitly to witness fees." (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439, 445 (1987)).

When Congress intends to shift witness fees, it does so expressly. *See id.* at 90 n.4 (collecting statutes); *cf. NantKwest*, 140 S. Ct. at 373–74 (describing expressly authorized attorneys' fess provisions). It did not mention expert fees in § 145, quite possibly because the PTO

---

[6] The Court acknowledges that the PTO has appealed its prosecution latches decision. *See Hyatt v. Iancu*, No. 18-2390, et al. (Fed. Cir. argued Feb. 6, 2020). If the PTO prevails on appeal, Mr. Hyatt will not be entitled to the fees the Court awards here. Nevertheless, the Court will exercise its discretion and decline to stay consideration of this motion until the Federal Circuit decides the appeal. Mr. Hyatt filed his patent applications at issue here in 1995; he filed the lead case here almost fifteen years ago and the parties have actively litigated for most of this decade. At this point, resolving the parties' remaining disputes as quickly as possible best serves the interests in judicial economy.

did not start using expert witnesses until 1985. *See Gould v. Mossinghoff*, Civil No. 80-3287, 1985 WL 6013 (D.D.C. Dec. 19, 1985). That statutory silence cannot trump express statutory text which authorizes courts to shift witness fees only for court-appointed experts. *See* 28 U.S.C. § 1920. The Court lacks the statutory authority required to shift expert fees onto a § 145 plaintiff.

The PTO points to an unbroken line of cases that have come out the other way. They cite this Court's order in *Sandvik Aktiebolag v. Samuels*, Civil No. 89-3127-LFO, 1991 WL 25774, (D.D.C. Feb. 7, 1991), which awarded expert fees in a § 145 action, but never addressed *West Virginia University*'s explicitness requirement. They cite several cases in the Eastern District of Virginia that award expert fees without explaining how the statute authorized the award. *See Halozyme, Inc. v. Iancu*, No. 1:16-CV-1580, 2018 WL 5270329, at *1 (E.D. Va. Oct. 23, 2018) ("Expenses are commonly understood to encompass printing, travel, and expert witness costs." (quotation marks omitted)); *Taylor v. Matal*, No. 1:15-cv-1607-LMB, 2017 WL 5147147, at *5 (E.D. Va. Nov. 6, 2017) ("It is well settled that the term 'expenses' as used in § 145 encompasses the costs associated with court reporters, transcription, printing, travel expenses, and expert witnesses."); *Realvirt, LLC v. Lee*, 220 F. Supp. 3d 704, 706 (E.D. Va. 2016) (looking to text alone to conclude that plaintiff is likely to lose on merits of PTO's expert fees claim). They also point to dicta in the Federal Circuit's decision in *NantKwest* discussing the uncontested expert fees award in that case. *See NantKwest, Inc. v. Iancu*, 898 F.3d 1177, 1181 (Fed. Cir. 2018) (en banc) (noting that PTO has relied on § 145 to collect expert fees). But the PTO has not pointed to a single precedent that gives a reasoned explanation as to how § 145 can provide for expert fees without expressly mentioning them. Accordingly, the cases PTO cites do not actually counter Mr. Hyatt's argument.

The Court has found only one case that comes close to explaining why § 145 overcomes the presumption against shifting expert witness fees. In *Booking.com B.V. v. Matal*, the Eastern District of Virginia held that a parallel provision in trademark law allowed the PTO to recover expert fees. No. 16-cv-425-LMB, 2017 WL 4853755, at *10 (E.D. Va. Oct. 26, 2017), *vacated and remanded*, No. 18-1309, 2020 WL 3578671 (U.S. July 2, 2020). In reaching that decision Judge Brinkema, relied on (1) Congress' choice of the word "expenses" instead of the narrower word "costs," (2) Congress' inclusion of the word "all" to broaden the scope of expenses, and (3) the ordinary meaning of the term "expenses." *Id.* But in *NantKwest*, the Supreme Court rejected all three rationales in explaining why § 145 does not include attorneys' fees. *See NantKwest*, 140 S. Ct. at 373–74 (explaining that word "expenses," though broader than costs, is not explicit enough to include attorneys' fees); *id.* at 372 ("The reference to 'expenses' in § 145 does not invoke attorney's fees with the kind of 'clarity we have required to deviate from the American Rule.'"); *id.* at 372–73 ("[T]he modifier 'all' does not expand § 145's reach to include attorney's fees. Although the word conveys breadth, it cannot transform 'expenses' to reach an outlay it would not otherwise include.").

The lack of reasoned precedent to support the PTO's position also answers their objections to Mr. Hyatt's reliance on *NantKwest*. The PTO is correct in arguing that *NantKwest* did not abrogate decisions applying § 145 to expert fees — but only because no precedents actually stand for the proposition that § 145 allows the PTO to recover expert fees. Moreover, the *NantKwest* Court's silence on the question of expert fees elucidates nothing because the parties did not present that question to the Court. *See Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 32 n.5 (1993). But what *NantKwest* makes clear is that the language in § 145 is not specific enough to overcome the common-law presumption against shifting attorneys' fees

embodied in the American Rule; *a fortirari*, § 145 cannot overcome the statutory presumption against shifting expert fees described in *West Virginia University*.

The PTO is not entitled to collect expert fees from Mr. Hyatt.

Finally, Mr. Hyatt does not contest that the government is entitled to $60.797.44 in reimbursement for its court reporting, travel, and photocopying expenses. Accordingly, the Court will award the PTO $60,797.44 in expenses.

### C. Mr. Hyatt's Motion to De-designate Protected Documents

The PTO designated most of the documents it produced in discovery as protected. Mr. Hyatt seeks to de-designate two classes of documents: (1) internal PTO case files, emails, and documents and (2) documents introduced at trial.

The PTO argues that it had good cause to designate the documents as protected because they are internal documents that are (1) maintained in confidence, (2) not generally available to the public, and (3) of a type that they would not ordinarily reveal to the public except in confidence.[7] That argument is enough to show good cause under the parties' stipulated protective order. *See* Stipulated Protective Order ¶ 1. And except for the evidence put forward at trial, Mr. Hyatt cannot show that any of the evidence does not meet those three criteria.

His citations to cases denying contested motions for protective orders are inapposite, because here the stipulated protective order provides the standards for protecting the documents. And his citations to FOIA cases provide no more support for this motion: Mr. Hyatt may well be able to get this information through FOIA litigation, but the very fact that he would have to litigate to see the files indicates that the PTO protects the documents from public disclosure.

---

[7] The rest of the PTO's arguments counter Mr. Hyatt's arguments rather than offering grounds for why the documents should remain protected.

The PTO, however, cannot protect materials that have been displayed in open court. Both the common law, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) and the First Amendment, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575–77 (1980), create strong presumptions in favor of public access to judicial proceedings and records. To be sure, there are rare occasions when evidence introduced in open court can be protected retroactively. *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993) (hypothesizing that it might protect "national security, the formula for Coca Cola, or embarrassing details of private life"). But to invoke such protection, the PTO must satisfy far more than the good cause standard under Rule 23(c). *Id.* To seal the records of a judicial proceeding requires a compelling showing of need. *Id.* In a case like this involving alleged government misconduct, that need must be extraordinarily compelling. The PTO has not come close to making that showing.

Accordingly, the Court will order the documents made public at trial (PTX-615, PTX-272, PTX-115, PTX-119, PTX-124, PTX-141, PTX-133, and PTX-140) de-designated as protected but allow the other designations to remain intact.

## IV.    CONCLUSION

Based on the foregoing, by separate order the Court will grant in part and deny in part Mr. Hyatt's motion for fees, grant in part and deny in part the PTO's motion for expenses, and grant in part and deny in part Mr. Hyatt's motion to de-designate confidential documents.

Date: ___7/23/20___

Royce C. Lamberth
United States District Judge

13