UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>            Plaintiff,<br><br>     v.<br><br>KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>            Defendant. | Civil Action No. 05-2310 (RCL)<br>Civil Action No. 09-1864 (RCL)<br>Civil Action No. 09-1869 (RCL)<br>Civil Action No. 09-1872 (RCL) |

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE*<br>TO EXCLUDE PLAINTIFF'S NEWLY PRODUCED EVIDENCE</u>**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 1

I.   MR. HYATT'S "SPECIFICITY" ARGUMENT HAS NO MERIT. ..................... 1

II.  THE NEW UNPRODUCED EXHIBITS SHOULD BE EXCLUDED AS UNTIMELY. ..... 3

    A.   Nothing allows Mr. Hyatt to add hundreds of newly produced exhibits. ............... 3

    B.   Mr. Hyatt does not dispute the USPTO's argument that the federal rules required him to disclose the new exhibits long ago. ..................................... 4

    C.   The USPTO did not forfeit its right to enforce Interrogatory No. 21. ................... 4

    D.   Newly produced documents fall within the USPTO's document request. ............ 7

    E.   Mr. Hyatt does not dispute that he could have produced these new documents previously ............................................................................................ 8

III. MR. HYATT'S ALLEGED SUMMARY AND DEMONSTRATIVE EXHIBITS SHOULD BE EXCLUDED. ........................................................................... 8

    A.   Summaries must be produced with sufficient notice to the opposing party. .......... 9

    B.   Mr. Hyatt's cited examples reflect the problems cited by the USPTO ................ 11

    C.   The timing of the exhibits' disclosure highlights the prejudice to the USPTO. .... 15

    D.   The exhibits should be excluded because they represent opinions or conclusions, which are not proper summary evidence. ........................................ 17

    E.   The summary exhibits will not provide the efficiencies Mr. Hyatt argues ........... 18

    F.   Mr. Hyatt does not dispute that the exhibits are not proper demonstratives ......... 19

IV.  MR. HYATT DOES NOT DISPUTE THAT THE DOCUMENTS FROM HIS FILES ARE UNTIMELY ............................................................................... 19

V.   NEWLY PRODUCED EXHIBITS RELATING TO SAWS SHOULD BE EXCLUDED. . 20

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agudas Chasidei Chabad of United States v. Russian Federation*,
  No. 1:05cv1548, 2020 WL 13611456 (D.D.C. Nov. 6, 2020)................................................10

*City of Huntington v. AmerisourceBergen Drug Corp.*,
  No.3:17-01362, 2021 WL 2907893 (S.D.W.V. July 9, 2021).................................................9

*Colon-Fontanez v. Municipality of San Juan*,
  660 F.3d 17 (1st Cir. 2011).........................................................................................9

*DL v. District of Columbia*,
  No. 05-1437, 2015 WL 6446087 (D.D.C. Oct. 23, 2015) ...............................................15, 16

*Eichorn v. AT&T Corp.*,
  484 F.3d 644 (3d Cir. 2007)......................................................................................17

*Fidelity Nat'l Title Ins. Co. v. Intercounty Nat. Title Ins. Co.*,
  412 F.3d 745 (7th Cir. 2005) ......................................................................................9

*Hyatt v. Hirshfeld*,
  998 F.3d 1347 (Fed. Cir. 2021)..........................................................................8, 9, 18

*Info-Hold, Inc. v. Sound Merchandising, Inc.*,
  538 F.3d 448 (6th Cir. 2008) ......................................................................................5

*James River Ins. Co. v. Janmark Resources, Inc.*,
  No. H-20-4365, 2022 WL 912776 (S.D. Tx. Mar. 29, 2022)...............................................7

*Jefferson v. Collins*,
  No. 12-239, 2015 WL 13659259 (D.D.C. Aug. 27, 2015) ....................................................8

*Krakauer v. Dish Network L.L.C.*,
  No. 1:14cv333, 2016 WL 6775859 (M.D.N.C. Sept. 19, 2016)...........................................10

*Lankford v. Taylor*,
  No. cv-17-02797, 2021 WL 1515504 (D. Ariz. Apr. 16, 2021) .............................................5

*O'Neal v. AmGuard Ins. Co.*,
  No. 4:22cv181, 2023 WL 3125356 (E.D. Tx. Apr. 27, 2023)..............................................7

*Silver State Broadcasting, LLC v. Bergner*,
  705 F. App'x 640 (9th Cir. 2017) .................................................................................7

*Steere v. George Washington University*,
    368 F. Supp. 2d 52 (D.D.C. 2005) ................................................................................4, 19

*United States v. Bishop*,
    264 F.3d 535 (5th Cir. 2001) ...........................................................................................18

*United States v. Bray*,
    139 F.3d 1104 (6th Cir. 1998) .........................................................................................17

*United States v. Fahnbulleh*,
    752 F.3d 470 (D.C. Cir. 2014) ...................................................................................10, 16

*United States v. Hemphill*,
    514 F.3d 1350 (D.C. Cir. 2008) ......................................................................................17

*United States v. Honeywell Int'l Inc.*,
    337 F.R.D. 456 (D.D.C. 2020) ........................................................................................17

*United States v. Pree*,
    408 F.3d 855 (7th Cir. 2005) ...........................................................................................17

*United States v. Procter & Gamble Co.*,
    356 U.S. 677 (1958) .........................................................................................................10

**Rules**

Federal Rule of Evidence 1006 ................................................................................... *passim*

Federal Rule of Civil Procedure 37(c) ...........................................................................3, 7

**Other Authorities**

Wright & Miller, 8B Federal Practice and Procedure § 2289.1 (3d ed.)
    (2023) ..................................................................................................................................7

31 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure §
    8045 (2nd ed.) (2023) .....................................................................................................10

Michael H. Graham, 8 Handbook of Fed. Evid. § 1006:1 (9th ed. 2022) ................10

## INTRODUCTION

In arguing that the USPTO's motion does not address his hundreds of previously unproduced exhibits with adequate specificity, Mr. Hyatt flips the analysis on its head. At no point does Mr. Hyatt explain how the challenged exhibits are timely. Because Mr. Hyatt failed to previously produce those exhibits, it is *his burden*, under Federal Rule of Civil Procedure 37(c) ("Rule 37(c)"), to explain why his failure was either substantially justified or harmless. He has not even attempted to do so—nor could he, as there is no excuse for disclosing hundreds of new exhibits less than two months before trial resumes after three previous opportunities to do so. His failure to even attempt to explain why he waited is sufficient to grant the USPTO's motion.

As explained in the opening paper, ECF No. 326[1] ("Mot."), Mr. Hyatt's late production of exhibits is entirely consistent with his approach to prosecution that that the Federal Circuit ruled all but guaranteed indefinite delay and caused material prejudice. Rather than present the case that he signaled he would in 2017, 2021, or earlier this year, Mr. Hyatt appears intent on ambushing the USPTO with a new case less than two months before trial. The Court should not allow him to do so.

## ARGUMENT

## I.   MR. HYATT'S "SPECIFICITY" ARGUMENT HAS NO MERIT.

Mr. Hyatt's lead argument is a complaint that the USPTO has not adequately identified the grounds for excluding his untimely exhibits. Plaintiff's Response in Opposition to Defendant's Motion *In Limine*, ECF No. 328 ("Opp.") 3–5. That argument is plainly incorrect. The USPTO explained that Mr. Hyatt added hundreds of newly produced documents to his exhibit list less than two months before trial resumes, without any explanation or justification, and that the USPTO is

---

[1] All citations to "ECF" refer to the docket of case number 1:05-cv-2310.

prejudiced by his doing so. Mot. 4–12. The USPTO provided additional, specific objections relating to categories of exhibits, with representative examples. *Id.* at 12–22. Nothing more is required—certainly the USPTO is not required to step through each of the more than 350 challenged exhibits individually.[2] Mr. Hyatt's contention that he was "left to guess which exhibits are subject to which arguments," Opp. 5, is particularly baseless—the USPTO's motion explains that *all* of the newly produced exhibits are untimely, and the proposed order lists the exhibits in each category discussed in the motion. ECF No. 326-1. These groupings are drawn directly from the descriptions on Mr. Hyatt's exhibit list, in which he labeled dozens of exhibits as "examples" and dozens more as listing "PTO time." *See* Exs. 1,[3] 2 (spreadsheets created by the USPTO grouping Mr. Hyatt's new "examples" and "PTO Times" exhibits). Mr. Hyatt can hardly be heard to complain when the USPTO's categories are drawn from his own exhibit list descriptions.

Mr. Hyatt's argument that the USPTO "barreled ahead with a motion," Opp. 5, is belied by the facts. After receiving Mr. Hyatt's voluminous exhibit list on July 25th, the USPTO began attempting to resolve the obvious problems with his 1,200 new exhibits less than 48 hours later. Ex. 3. The USPTO continued to reach out, early and often, about issues including missing exhibits, numerous duplications, excessive size, and lack of bates numbering—issues that should have been caught by even the most basic quality control measures—and requested a meet and confer on August 8th. Exs. 3–10. It wasn't until the USPTO finished reviewing all of the new exhibits and served its objections on August 15th, however, that it realized the full extent of the problems with Mr. Hyatt's new exhibits. Over the next week the parties met-and-conferred two more times and

---

[2] Mr. Hyatt contends that his letter to the USPTO set out "a more specific set of categories." Opp. 5. Nothing requires the USPTO to adopt Mr. Hyatt's view of his exhibit list, and Mr. Hyatt does not contend that the USPTO's categories are inaccurate.

[3] All exhibits referred to in this motion are attached to the Declaration of Peter J. Ayers (Ex. A), filed concurrently herewith.

exchanged additional emails in an effort to resolve the USPTO's serious objections. *See* Opp. 3; Exs. 11–13. Those efforts successfully led Mr. Hyatt to remove over 300,000 pages of exhibits. Opp. 3. The final meet-and-confer occurred just 11 days before the pretrial conference, and Mr. Hyatt's letter that same day indicated to the USPTO that he would not withdraw hundreds of problematic newly produced exhibits. ECF No. 328-1, at 4–5. In short, the USPTO waited as long as it could to file this motion while still ensuring that it could be adequately briefed before the pretrial conference.

More importantly, Mr. Hyatt's argument once again attempts to blame USPTO for his own unreasonable and unexplained actions. Because he is the one seeking to add hundreds of new exhibits that should have been produced earlier, it is *his* burden to show that their addition would be either substantially justified or harmless. Rule 37(c). He has not attempted to do so, *see generally* Opp., and so the exhibits should be excluded.

## II.    THE NEW UNPRODUCED EXHIBITS SHOULD BE EXCLUDED AS UNTIMELY.

Although Mr. Hyatt criticizes the USPTO's argument that his new exhibits are untimely, he does not explain why the newly produced exhibits were timely disclosed. The Court should reject Mr. Hyatt's arguments and exclude the exhibits.

### A.    Nothing allows Mr. Hyatt to add hundreds of newly produced exhibits.

Mr. Hyatt does not dispute that:

- Fact discovery concluded on August 25, 2017, Mot. 2;

- He could have, but did not, produce the challenged exhibits during the original discovery period, *id.* at 6–8;

- He could have, but did not, produce them with his August 2021 exhibit list, *id.*;

- He could have, but did not, produce them in the February 2023 exhibit exchange, *id.*; and

- "At no point did the USPTO agree to further production of new, extrinsic documents," *id.* at 3.

*See generally* Opp. With discovery closed for years and two earlier post-remand opportunities, Mr. Hyatt does not identify any rule or agreement that would allow him to produce new documents and add them to his exhibit list less than two months before trial resumes. Indeed, no such authority exists. That is sufficient to grant the USPTO's motion—the challenged exhibits are clearly untimely, Mr. Hyatt has not justified or explained their late addition, and allowing the new exhibits would prejudice the USPTO. Thus, the challenged exhibits should be excluded.

### B. Mr. Hyatt does not dispute the USPTO's argument that the federal rules required him to disclose the new exhibits long ago.

The USPTO argued that Rule 26(a)(1)(A)(ii) required Mr. Hyatt "to disclose these documents long ago." Mot. 5. Mr. Hyatt does not respond to this argument. *See* Opp. Accordingly, the Court should treat that argument as conceded. *Steere v. George Washington University*, 368 F. Supp. 2d 52, 57 (D.D.C. 2005) (finding that a party conceded an argument "by not responding [to the argument] in their opposition papers."). This is Mr. Hyatt's second post-remand violation of Rule 26. ECF No. 309, at 29–30. As Rule 26 required Mr. Hyatt to previously disclose these exhibits "without awaiting a discovery request," he did not do so, and he has not attempted to justify his failure, this provides an additional sufficient reason for the Court to grant the USPTO's motion and exclude the exhibits.

### C. The USPTO did not forfeit its right to enforce Interrogatory No. 21.

The USPTO also argued that Mr. Hyatt was required to previously produce his new exhibits under its Interrogatory No. 21. Mot. 5. Mr. Hyatt responds that because he objected to the

4

interrogatory and the USPTO did not move to compel a response, the USPTO may not now rely on Interrogatory No. 21.

Mr. Hyatt is incorrect because he provided a full response to Interrogatory No. 21. Mr. Hyatt stated that the USPTO would "receive Plaintiff's Exhibit List in approximately two weeks . . ., so that Defendant will know exactly which documents Plaintiff intends to rely upon at trial." ECF No. 326-6, at 5–6. Because Mr. Hyatt was answering Interrogatory No. 21 the USPTO had no reason to move to compel. Simply briefing the motion would have taken at least close to two weeks, at which point the USPTO would have received Mr. Hyatt's response and there would be nothing left to compel. There would be no sense in wasting the parties' and the Court's resources compelling Mr. Hyatt to produce information that he was going to produce anyway.

That fact—that Mr. Hyatt provided a fulsome response to the USPTO's interrogatory—distinguishes this case from those cited by Mr. Hyatt. Opp.7–8. In both *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 457–58 (6th Cir. 2008), and *Lankford v. Taylor*, No. cv-17-02797, 2021 WL 1515504, at *7 (D. Ariz. Apr. 16, 2021), for example, the objecting party withheld the requested information. Mr. Hyatt, instead, provided the information that the USPTO requested in 2017—and there was no reason to move to compel post-remand because discovery was closed and there was no reason to expect productions outside of those specifically agreed to by the parties.

Moreover, Mr. Hyatt's 2017 objections to Interrogatory No. 21 support the USPTO's argument. Those objections are premised on the understanding that all documents that Mr. Hyatt would rely on had already been produced. Mr. Hyatt's objections divided responsive documents into two categories, both of which has already been "produced": (1) materials from "Plaintiff's patent applications," which "Defendant has produced," and (2) "remaining documents produced

5

by Defendant and Plaintiff." ECF No. 326-6 at 5. Mr. Hyatt's objections provided no inkling of what the USPTO found out just weeks ago—that Mr. Hyatt plans to rely on at trial hundreds of documents that were not previously produced, including documents that had long been in Mr. Hyatt's files. If Mr. Hyatt realized after the Federal Circuit's remand that he wanted to rely on documents that had not yet been produced, his objections to Interrogatory No. 21 required that he (1) produce those documents pursuant to the exchanges that the parties negotiated after the remand; or (2) amend his facially stale objections to make clear that he was going to rely on documents that would not be produced in the exchanges, thereby apprising the USPTO that it would need to move to compel. Not having taken either action, Mr. Hyatt cannot now fault the USPTO for not moving to compel.

Mr. Hyatt contends that the USPTO's arguments regarding its interrogatory are inconsistent with its conduct in responding to Mr. Hyatt's Interrogatory No. 7 because the USPTO added exhibits to its exhibit list. Opp. 8. Mr. Hyatt is incorrect. The USPTO's MIL is limited to documents that Mr. Hyatt produced *for the first time* with his July 2023 exhibit list—exhibits that Mr. Hyatt could have, and should have, produced earlier. The only USPTO exhibits listed by Mr. Hyatt—DTX-1641–43 and 1679–81,[4] Opp. 8—were previously produced to Mr. Hyatt, subject to the parties' agreed exchange, in February 2023. Mr. Hyatt does not identify any exhibits that the USPTO added to its exhibit list that it had not previously produced.[5] By contrast, the exhibits that are the subject of this MIL were not produced to the USPTO until less than two months before trial and without any agreement regarding newly produced documents.

---

[4] The opposition states "PTX-1641–43, 1679–81," but use of "PTX" appears to be an error.

[5] Mr. Hyatt also mentions that the USPTO added "300 new exhibits comprising 23,315 pages," but the situation is not remotely similar. Mr. Hyatt added 1,250 exhibits—more than four times the number added by the USPTO—and the exhibits that Mr. Hyatt agreed to *drop* were more than 300,000 pages—more than 12 times the total amount added by the USPTO.

Mr. Hyatt is additionally incorrect because a motion to compel is not a prerequisite to exclusion where the material was required by the initial disclosures—as Mr. Hyatt does not contest was required here. *Silver State Broadcasting, LLC v. Bergner*, 705 F. App'x 640, 641 (9th Cir. 2017); *O'Neal v. AmGuard Ins. Co.*, No. 4:22cv181, 2023 WL 3125356, at *2 (E.D. Tx. Apr. 27, 2023); *James River Ins. Co. v. Janmark Resources, Inc.*, No. H-20-4365, 2022 WL 912776, at *1 (S.D. Tx. Mar. 29, 2022); Wright & Miller, 8B FEDERAL PRACTICE AND PROCEDURE § 2289.1 (3d ed.) (2023) ("The [Rule 37(c)] sanction is automatic in the sense that there is no need for the opposing party to make a motion to compel disclosure . . . as a predicate for imposition of the sanction of exclusion."). Accordingly, Mr. Hyatt's arguments have no merit.

### D. Newly produced documents fall within the USPTO's document request.

Document Request No. 2 sought "[a]ll documents relating to patent prosecution . . . that are not in the administrative record of each application." ECF No. 326-4, at 4 (emphasis added). Mr. Hyatt objected to the scope of the request, so he and the USPTO worked together to identify specific categories of information that he would produce. Ex. 14, at 3–7. Those categories included "notes regarding communications with USPTO personnel" and "communications with third parties about applications." *Id* at 6–7.[6] For both categories, Mr. Hyatt represented that he had "done a diligent search, and has no further documents to produce." *Id.* Mr. Hyatt further noted that pursuant to this request, he had produced "excerpts of book" and "copies of . . . books," *id.* at 4, indicating that he understood to request such materials.

Many newly produced documents fall within the scope of this request. PTX-1824 (Ex. 15) purports to be a "telephone summary" of a conversation with USPTO "SPE Thomas Lee." It is

---

[6] Mr. Hyatt's providing of supplemental responses to document requests that he objected to is inconsistent with his position that, having objected, he was under no obligation to provide a further response to the USPTO's Interrogatory No. 21.

undated and does not bear a USPTO Bates number. It thus appears to be a note regarding communications with USPTO personnel, which would fall within the scope of the request. Mr. Hyatt's exhibit list also reflects several excerpts of books or books themselves, which Mr. Hyatt in 2017 understood to be encompassed by this request. ECF No. 321-1, at 13 (PTX1376, "Digital Computer Design Fundamentals") and at 29 (PTX-1753, "Integrated Circuits Design Principles and Fabrication").

### E. Mr. Hyatt does not dispute that he could have produced these new documents previously.

The USPTO explained that Mr. Hyatt has had at least three previous opportunities to produce the exhibits that are the subject of this motion, and failed to do so. Mot. 5–8. Mr. Hyatt does not dispute that he could have disclosed these exhibits during any of those periods, and does not explain why he did not do so. Mr. Hyatt cannot blame the Federal Circuit's decision for that failure, Opp. 1, 3—he has had more than two years and two separate opportunities to produce responsive evidence since then. The USPTO cited *Jefferson v. Collins*, No. 12-239, 2015 WL 13659259, at *2 (D.D.C. Aug. 27, 2015), in its opening paper for the proposition that a delay of "over a year" was neither justified nor harmless, Mot. 6. Mr. Hyatt does not attempt to distinguish or even cite that case. As he has not even attempted to justify his failure, the newly produced documents should be excluded.

## III.  MR. HYATT'S ALLEGED SUMMARY AND DEMONSTRATIVE EXHIBITS SHOULD BE EXCLUDED.

At the outset, it is worth noting the irony of Mr. Hyatt's extensive attempt to rely on Federal Rule of Evidence 1006 ("Rule 1006") to justify his prosecution actions. The Federal Circuit determined that, before the USPTO, Mr. Hyatt pursued a course of conduct that "overwhelmed" both the USPTO and Mr. Hyatt's "own ability to manage his applications and claims." *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1368–69 (Fed. Cir. 2021). Rather than rely on his *actual* prosecution

activity, however, Mr. Hyatt is attempting to introduce purported "summaries" under the guise of "aid[ing] the Court in working expeditiously through" Mr. Hyatt's applications. Opp. 10. Mr. Hyatt employed no such expedient when prosecuting his applications at the USPTO; instead, he used a "time-wasting process [that] obstructed the PTO from examining . . . nearly all of his GATT Bubble applications." *Hyatt*, 998 F.3d at 1369. It is particularly striking that Mr. Hyatt describes going "through each document one by one" as "an enormous waste of trial resources," Opp. 13, as stepping through and responding to each document is exactly what the USPTO must do in examining Mr. Hyatt's applications. Instead, and as Mr. Hyatt does not dispute, by attempting to use "summaries instead of the actual documents, Mr. Hyatt obfuscates his own responsibility for delay." Mot. 20.

### A.    Summaries must be produced with sufficient notice to the opposing party.

Mr. Hyatt contends that Rule 1006 summaries need not be produced to the opposing party. Opp. 6 (citing *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011)). That position is not as "well established" as Mr. Hyatt suggests. *See id.* at 5. The Seventh Circuit has stated that "[n]o federal rule is needed . . . to empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial." *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005). One district court has read *Fidelity* as "suggest[ing] that fundamental fairness requires" the "disclosure of the summaries themselves," and concluded that "[c]ommentaries . . . support the . . . view" that summaries must be disclosed. *City of Huntington v. AmerisourceBergen Drug Corp.*, No.3:17-01362, 2021 WL 2907893, at *5 n.7 (S.D.W.V. July 9, 2021). One such commentary—previously cited by this Court—criticizes *Colon-Fontanez* as "ludicrous and clearly defeating of the entire

purpose of Rule 1006." Michael H. Graham, 8 HANDBOOK OF FED. EVID. § 1006:1 (9th ed. 2022); *Agudas Chasidei Chabad of United States v. Russian Federation*, No. 1:05cv1548, 2020 WL 13611456, at \*27 (D.D.C. Nov. 6, 2020) (citing the 8th ed. of same). *See also* 31 Charles A. Wright & Victor J. Gold, FEDERAL PRACTICE AND PROCEDURE § 8045 (2nd ed.) (2023) (explaining that without the summaries themselves, "adverse parties cannot know what to look for in the source material to determine if the summaries are accurate."). One district court granted a motion *in limine* to exclude summary exhibits produced "long after the close of discovery and shortly before trial." *Krakauer v. Dish Network L.L.C.*, No. 1:14cv333, 2016 WL 6775859, at \*7 (M.D.N.C. Sept. 19, 2016). This is all consistent with the Supreme Court's admonition that discovery ensures that trial is "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Those fairness concerns have considerable force here. Less than two months before trial, Mr. Hyatt produced hundreds of alleged summary documents, themselves summarizing hundreds or thousands of other documents, without providing Bates numbers such that the USPTO could determine the accuracy of the summaries and prepare for cross-examination.[7] Mot. 12–14, 17–20. And even a cursory review shows that there are accuracy concerns with these exhibits. *Id.* at 17–19. For summary exhibits, accuracy goes to admissibility, not weight, *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (to be admissible, "the summary must be accurate and

---

[7] Mr. Hyatt blames the USPTO for his inability to produce documents with Bates numbers, variously contending that the USPTO's 2017 production was incomplete (Mr. Hyatt does not explain how or what steps he took to remedy that); that it is "cumbersome" to work with the 2017 production; and that the USPTO has not updated its 2017 production. Opp. 11–12. If Mr. Hyatt was having issues he could have attempted working with the USPTO toward a shared solution. Mr. Hyatt's offer to provide the USPTO "a set of his patent application file histories," Opp. 12, is unhelpful—the point of discovery is to create a shared universe of evidence that will form the basis of trial, which is exactly what the 2017 production was supposed to accomplish.

nonprejudicial"), and Mr. Hyatt, as the proponent of the evidence, must prove that they meet the requirements. Moreover, Mr. Hyatt does not dispute that he could have disclosed these exhibits earlier, either before the 2017 half of the trial or as part of either of the post-remand exchanges— and that doing so would have allowed the USPTO to verify previously whether his alleged summaries are accurate or not.

###    B.    Mr. Hyatt's cited examples reflect the problems cited by the USPTO.

Mr. Hyatt contends that the USPTO "intentionally obfuscates most of what these summary exhibits address." Opp. 10. Not so. As Mr. Hyatt does not attach any of the exhibits he discusses to his opposition, it is unclear what he believes that the USPTO has omitted. He contends that PTX-1401 (Ex. 16) "identifies the applications where Mr. Hyatt received a Rule 105 Requirement from the PTO in the mid-2000s." Opp. 10. The exhibit does not say that; and it (similar to Mr. Hyatt's other purported summaries) does not include Bates numbers for the relevant documents:

| # | D/N | S/N | Filing Date | 2013 Requirement Date | Next OA after 105 Requirement |
|---|-----|-----|-------------|-----------------------|-------------------------------|
| 1 | 900 | 11/006,408 | 12/06/04 | 10/24/13 | 4/1/15 |
| 2 | 901 | 11/006,099 | 12/06/04 | 10/31/13 | 3/2/15; 1/20/16 |
| 3 | 902 | 11/006,062 | 12/06/04 | 10/28/13 | 1/9/15; 9/14/15 |
| 4 | 904 | 11/006,206 | 12/06/04 | 10/24/13 | 5/21/15; 3/7/16 |
| 5 | 906 | 11/006,182 | 12/06/04 | 10/24/13 | 4/29/15; 7/6/16; 9/8/17 |
| 6 | 907 | 11/006,134 | 12/06/04 | 10/30/13 | 4/16/15 |
| 7 | 908 | 11/006,170 | 12/06/04 | 10/24/13 | 12/12/14; 9/14/15 |

Ex. 16. This summary is also incomplete, raising questions about its accuracy and the judgments Mr. Hyatt made in creating it. While Mr. Hyatt lists certain of the office actions issued by the USPTO in these applications after the 2013 Requirements, it is unclear why—to the extent the point is to list applications where Mr. Hyatt received a requirement, the next office action is

irrelevant. Even so, Mr. Hyatt's listing of subsequent actions omits that he allowed these applications to go *abandoned*, either expressly or by not responding to the listed office actions. Ex. 17.

Mr. Hyatt then contends that another exhibit (PTX-1435, Ex. 18) depicts examples of USPTO examiners identifying priority dates. Opp. 10. Again, that is not apparent from the exhibit itself, as this excerpt shows—again, without Bates numbers:

| Item | D/N | S/N | Date of Document | Examiner | Art Unit | Type of Document | Page Nos. | Ancestor S/N | Ancestor D/N | Priority Date |
|------|-----|-----|------------------|----------|----------|------------------|-----------|--------------|--------------|---------------|
| 1 | 355 | 08/323,471 | 10/31/2007 | Almis R. Jankus | 2628 | OA | 2 | 06/504,691 | 193 | 06/15/1983 |
| 2 | 366 | 08/469,061 | 06/29/2001 | Muhammad N Edun | 2653 | OA | 2 | 06/662,211 | 302 | 10/18/1984 |
| 3 | 366 | 08/469,061 | 07/13/2001 | Muhammad N Edun | 2651 | OA | 2 | 06/662,211 | 302 | 10/18/1984 |
| 4 | 370 | 08/455,798 | 07/19/1996 | Nathan J. Flynn | 2602 | OA | 2-3 | 07/515,881 | 333 | 04/27/1990 |
| 5 | 371 | 08/455,924 | 07/24/1996 | Nathan J. Flynn | 2602 | Final OA | 2-3 | 07/515,881 | 333 | 04/27/1990 |
| 6 | 372 | 08/455,297 | 04/28/1998 | John W. Miller | 2602 | Final OA | 2-3 | 07/515,881 | 333 | 04/27/1990 |
| 7 | 373 | 08/455,303 | 07/24/1996 | Nathan J. Flynn | 2602 | Final OA | 2-3 | 07/515,881 | 333 | 04/27/1990 |

Ex. 17. Mr. Hyatt notes that he presented information in this fashion in the past, Opp. 10—but the USPTO objected to many of those documents too.[8] ECF No. 288-2, at 5, 12, 19–20, 22, 28.

Mr. Hyatt further argues that "the quantity of information summarized is what makes the use of summaries both proper and valuable." Opp. 12. Even if true in the abstract, Mr. Hyatt is using these summaries to prevent the USPTO from determining the point of his exhibits. PTX-1395 (Mot. 12–13; Mot. Ex. 14; Opp. 12) illustrates the point. Mr. Hyatt argues that PTX-1395 shows "the serial numbers, docket numbers, and filing dates of patent applications in Mr. Hyatt's 700 family of applications *that were subject to appeals subsequently dismissed by the PTO*." Opp. 12 (emphasis added). The problem for Mr. Hyatt is that there is absolutely no indication that that is what PTX-1395 represents. As the USPTO showed in its motion, the exhibit itself is simply a

---

[8] Certain of the exhibits listed in the opposition, for example PTX-078 and 080, do not appear to be summaries at all. *Compare* Opp. 10 *with* ECF No. 287-1, at 3.

list of serial numbers and filing dates. Mot. 13. Mr. Hyatt's exhibit list describes PTX-1395 as "Examples of Appeal Briefs including Patent Application Serial No. 08/458,143 (#702)." ECF 321-1, at 14. So if neither exhibit nor exhibit list accurately state what is apparently being summarized, how can the USPTO possibly verify the accuracy of the underlying documents or prepare for cross?

PTX-1395 also illustrates the difficulty that the USPTO faces in trying to verify the accuracy of the documents underlying the summaries. While Mr. Hyatt argues that the USPTO does not have to "search through the entire prosecution history of each application to find the appeal brief," that is exactly what he proposes: "search[ing] the file history through a review of [the] file wrapper." Opp. 12. That the "file histories are chronologically arranged and bookmarked with dates and document descriptions" also does not help, as PTX-1395 does not list the dates of the appeal briefs that it references. Further, Mr. Hyatt illuminated for the first time in his opposition that PTX-1395 is intended to reflect applications "subject to appeals subsequently dismissed by the PTO." Opp. 12. PTX-1395 does not indicate a date of dismissal, similarly requiring the USPTO to search for that document. Even assuming the purported ease of finding each document individually (and even ignoring the time that it would take to prepare the documents for use as impeachment materials), the point is that Mr. Hyatt has added hundreds of purported summary exhibits, referencing in total hundreds or thousands of documents across his prosecution histories. That time adds up, and is not (as Mr. Hyatt contends, Opp. 13) "trivial"—and considering that Mr. Hyatt's last-minute disclosure of these exhibits and his previous opportunities to disclose them, it is time that the USPTO should not be forced to expend in the last weeks before trial resumes.[9]

---

[9] The page numbers in PTX-1400, for example, (Opp. 13) are offset by that exhibit including 240 rows of documents.

And, in addition, that assumes that the exhibit or exhibit list accurately indicates the import of the exhibit—as Mr. Hyatt's opposition repeatedly indicates, and as explained above, the import of any given exhibit and whether other documents may additionally be relevant is entirely unclear.[10]

What Mr. Hyatt refers to as "Purported 'Duplicate Entries'"[11] have the same issues. Opp. 16–17. Mr. Hyatt contends that, apparently, these exhibits reflect "delays . . . in applications that are parents to multiple child applications, which are the ones identified in the titles of the summary exhibits." *Id.* at 17 (emphasis removed).[12] Again, nothing in the exhibit itself or the exhibit list characterizes these documents are reflecting "applications that are parents to multiple child applications." Again, then, these summaries appear intended to hide the import of the exhibits, rather than provide notice of how Mr. Hyatt is intending to use them.[13] In view of such tactics, Mr. Hyatt's argument that cross is an adequate remedy, Opp. 17, rings particularly hollow.

There are similar issues with Mr. Hyatt's exhibits that purport to summarize information from outside his file history. Mot 16; Opp. 13. Mr. Hyatt contends that the USPTO opened the door to PTX-1934 (which references the number of claims in published patent applications) because it addresses the same subject matter as DTX-251. Opp. 13–14. Even if true, that only

---

[10] Mr. Hyatt argues that it is not clear why the USPTO would need to check the file histories to confirm that "those applications were subject to appeals that the agency terminated." Opp. 16. Putting aside the basic professional responsibility to confirm an opposing party's evidence, the first time that Mr. Hyatt represented that PTX-1395 relates to terminated appeals *was in his opposition to this motion*.

[11] Despite putting "duplicate entries" in quotation marks, Mr. Hyatt does not dispute that the listed exhibits include duplicative entries of the same application. *See* Opp.16–17.

[12] Mr. Hyatt's thinly veiled intimation that the USPTO recognized, but failed to disclose to the Court, the meaning of Mr. Hyatt's exhibits is not well taken. *Nothing* in either the exhibits or their descriptions suggest that the listed applications are parent to multiple child applications.

[13] PTX-1503 has the same issues. In his opposition, Mr. Hyatt indicates that the graph shows "which examiners were assigned the most Hyatt applications." Opp. 15. Neither the exhibit nor the exhibit list say that. Mr. Hyatt contends that the data was produced by the USPTO, and included as PTX-082 on Mr. Hyatt's exhibit list. *Id.* PTX-1503 does not reference PTX-082 in any way.

proves the USPTO's point that Mr. Hyatt has no excuse for not disclosing this exhibit earlier, as he has had notice of DTX-251 since at least the 2017 phase of the trial (and could use it in his own presentation). And Mr. Hyatt's argument ignores that his exhibit list contains other exhibits (including examples of "child application benefit counts," "parent applications by children counts," and "patent with large drawings") not implicated by DTX-251. ECF 321-1, at 34, 36.

### C. The timing of the exhibits' disclosure highlights the prejudice to the USPTO.

As explained above, there are significant questions regarding the accuracy of Mr. Hyatt's alleged summary exhibits. The timing of Mr. Hyatt's disclosure highlights those concerns because it limits the USPTO's ability to determine what the exhibits are aimed at disclosing and how they were prepared. Mr. Hyatt attempts to distinguish *DL v. District of Columbia*, No. 05-1437, 2015 WL 6446087, at *7–8 (D.D.C. Oct. 23, 2015), in which this Court allowed the deposition of the attorney who created certain summary exhibits. The Court determined that the "lack of automation and reliance on human judgment manifestly support[] th[e] conclusion" that deposition was necessary, which rendered them "very different from a 'chart or calculation' considered in FRE 1006, which more often than not condenses vast amounts of quantitative information." *Id.* at *8. Mr. Hyatt simply asserts that there are "run-of-the-mill Rule 1006 summaries," but does not explain how he created them or what judgments he made in doing so.

Mr. Hyatt's response regarding PTX-1534 illustrates the point. The USPTO showed that PTX-1534 is inaccurate because it fails to include a USPTO Examiner's Answer, and therefore improperly attributes six months of time to the USPTO. Mot. 17–19. Mr. Hyatt's response shows that he has exercised the kind of human judgment criticized in *DL*. *See* Opp. 16. Specifically, Mr. Hyatt argues that it was proper not to include the Examiner's Answer because "that's how long the application was stuck in appeal briefing"—notwithstanding that six months of that time was

due to the USPTO awaiting Mr. Hyatt's response—and that the additional briefing was allegedly caused by the Examiner entering a new ground of rejection. *Id.* Thus, Mr. Hyatt admits that the exhibit does not simply summarize what happened during prosecution; it reflects subjective judgments that Mr. Hyatt made regarding who (in his view) is responsible for certain time. *See id.* It therefore manifestly does *not* "merely 'condense[] vast amounts of quantitative information' into manageable form." Opp. 13 (quoting *DL*, 2015 WL 6446087, at *8). This is not a question of choosing a manner of accounting, Opp. 16—the exhibit misrepresents the prosecution record, and therefore does not meet the FRE 1006 accuracy requirement. Contrary to Mr. Hyatt's argument (at Opp. 16), this failure to accurately represent the record does call into question the other summary exhibits, particularly considering that this error is repeated in at least eight other exhibits. Mot. 19. If Mr. Hyatt had disclosed these exhibits earlier—as he does not dispute he could have—the USPTO could have deposed him regarding these judgments and tested their soundness. Requiring the USPTO to do so live at trial is prejudicial.

Mr. Hyatt's argument that any errors could be cured by cross examination, Opp. 17, ignores that Rule 1006 *requires* evidence to be both accurate and nonprejudicial to be admissible. *Fahnbulleh*, 752 F.3d at 479. Nothing the USPTO brings out on cross of Mr. Hyatt can change the text of these exhibits which, if admitted, label all of the time as "Total PTO Years" of alleged delay, even when the individual entries that make up that total are not all attributable to the USPTO and even when entries are counted multiple times across multiple exhibits. The issues identified by the USPTO go to the heart of whether Mr. Hyatt's exhibits accurately represent his underlying file histories, and the timing of his disclosure prejudices the USPTO's ability to identify those inaccuracies and prepare for cross. This is not a matter of mistaken calculations, Opp. 17 (quoting

*United States v. Hemphill*, 514 F.3d 1350, 1359 (D.C. Cir. 2008)), but of Mr. Hyatt's failure to meet basic evidentiary requirements.

### D. The exhibits should be excluded because they represent opinions or conclusions, which are not proper summary evidence.

The USPTO explained that exhibits which represent opinions or conclusions are not properly summary evidence. Mot. 15–16. Mr. Hyatt contends that the USPTO's authority is inapplicable, Opp. 14, but then does not address all of the USPTO's cited cases. Mr. Hyatt does not dispute that *United States v. Bray* requires a summary to present the information "accurately, correctly, and in a nonmisleading manner" and that the summary "is not embellished by or annotated with the conclusions or inferences drawn by the proponent." 139 F.3d 1104, 1109–10 (6th Cir. 1998). Accuracy is a *requirement* for introduction under Rule 1006, and so (contrary to Mr. Hyatt's arguments, Opp. 14–15) "it is generally inappropriate to give a *limiting* instruction for a Rule 1006 summary."[14] *Bray*, 139 F.3d at 1111. *Eichorn v. AT&T Corp.* is the same, rejecting exhibits that "went beyond the data they summarized and included several assumptions, inferences, and projections about future events, which represent[ed] [the witness]'s opinion, rather than the underlying information." 484 F.3d 644, 650 (3d Cir. 2007). Here, again contrary to Mr. Hyatt's arguments, the court excluded the evidence, rather than issuing a limiting instruction *Id.* And in *United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 460 (D.D.C. 2020), Mr. Hyatt even admits that the court excluded the offending evidence. Opp. 14. In sum, Mr. Hyatt fails to distinguish the USPTO's cited cases, which establish that evidence representing opinions or conclusions are not properly included in summaries.

---

[14] Mr. Hyatt's cited case, *United States v. Pree*, 408 F.3d 855, 871–72 (7th Cir. 2005), addresses demonstrative exhibits (i.e., "summary charts . . . introduced into evidence as a teaching device rather than as substantive evidence"), and does not present any analysis under Rule 1006.

Mr. Hyatt contends that, in any event, any opinions or conclusions are contained in the description of the exhibits, rather than the exhibits themselves, and therefore "present no barrier to admission." Opp. 14. Mr. Hyatt is incorrect. To the extent that the descriptions are compilations of the USPTO allegedly ignoring applications' written descriptions or figures, the exhibits themselves represent the opinions and judgments of Mr. Hyatt regarding his own applications and the USPTO's actions, not a quantitative summary of prosecution events. Mot. 15. But many other exhibits—specifically, the exhibits that allege "PTO delay" and "PTO time," Mot. 16–21—*do* include opinions and conclusions on the face of the exhibits themselves. As the USPTO explained, *id.*, and as Mr. Hyatt admits, Opp. 15, 15 n.2, these exhibits represent Mr. Hyatt's opinion and conclusion that certain periods of time are attributable to the USPTO, and not to him.[15] This is not "choosing which data to present in a summary," as Mr. Hyatt argues, Opp. 15—it represents Mr. Hyatt's judgments and opinions, which are not proper summary evidence under Rule 1006.[16]

### E.    The summary exhibits will not provide the efficiencies Mr. Hyatt argues.

Mr. Hyatt contends that "the summaries are designed to avoid a waste of time that would be necessitated by having to go through each document one by one." Opp. 13. Yet it is already clear that the summaries will not provide such efficiencies. As the USPTO explained, in its motion and above, the summaries contain clear inaccuracies and lack context. Mot. 17–20. This will force

---

[15] Mr. Hyatt contends that he is not attempting to use USPTO delay to justify his own delay, and instead is attempting to determine whether time spent in prosecution is attributable to him or the USPTO. Opp. 15 n.2. But the Federal Circuit's decision examined Mr. Hyatt's *conduct*, not a comparative "ledger" of delay. *Hyatt*, 998 F.3d at 1363–66. Prosecution laches "asks a separate question" from "[t]he PTO's delay": "whether the patent should issue, or if issued is enforceable, in light of the applicant's litigation conduct." *Id.* at 1366. In other words, the Federal Circuit decision prohibits Mr. Hyatt's approach to rebutting the USPTO's evidence of prosecution laches.

[16] This distinguishes the present case from *United States v. Bishop*, Opp. 15, as the exhibits do not "include only evidence favoring one party"—they present opinions and conclusions. 264 F.3d 535, 547 (5th Cir. 2001).

the USPTO to step through each of the documents listed in Mr. Hyatt's summaries anyway, and in some cases introduce additional documents to provide relevant context. For example, the inaccuracies in PTX-1534 would require the USPTO to impeach Mr. Hyatt with both the examiner's answer and Mr. Hyatt's own reply—steps that would be unnecessary if the challenged exhibits are not admitted.

        **F.**      **Mr. Hyatt does not dispute that the exhibits are not proper demonstratives.**

The USPTO argued that, as demonstratives are not evidence, Mr. Hyatt's purported summary exhibits that include documents that have not been and will not be admitted into evidence are not proper demonstratives. Mot. 21. Mr. Hyatt does not dispute this point, aside from PTX-1503, and so the Court may therefore take it as conceded for Mr. Hyatt's other examples exhibits.

**IV.**    **MR. HYATT DOES NOT DISPUTE THAT THE DOCUMENTS FROM HIS FILES ARE UNTIMELY.**

The USPTO explained that certain documents appear drawn from Mr. Hyatt's personal files; that those documents have been in Mr. Hyatt's possession for decades; and that the USPTO would be prejudiced by their late addition because it will have no opportunity to perform discovery regarding those documents. Mot. 22. Therefore, the USPTO argued, those documents should be excluded.

Mr. Hyatt does not dispute any of those points, so the Court may take them as conceded. *Steere*, 368 F. Supp. at 57. Instead, Mr. Hyatt appears to contend that the documents will aid in his testimony that "he sought investment to commercialize and otherwise market his inventions," which in his view will "directly rebut testimony by the PTO's witnesses (and statements in its exhibits and office actions) that Mr. Hyatt was a 'submariner' or sought to draw out prosecution." Opp. 17–18. This argument goes to the purported relevance of any evidence, not the timeliness,

and does not explain why Mr. Hyatt, with the trial transcript and Federal Circuit decision in hand and these documents in his files more than two years ago, did not then disclose them.

In addition, the USPTO would be prejudiced if Mr. Hyatt is allowed to use these exhibits. The USPTO explained that it "is prejudiced by Mr. Hyatt's late addition of these exhibits because it will have no opportunity to perform further discovery or depose witnesses." Mot. 22. Accordingly, Mr. Hyatt's argument that the USPTO "does not explain how introduction of these exhibits . . . will prejudice it," Opp. 18, is incorrect. These exhibits should be excluded.

## V.   NEWLY PRODUCED EXHIBITS RELATING TO SAWS SHOULD BE EXCLUDED.

The USPTO explained that at least 95 of Mr. Hyatt's new exhibits appear directed to the SAWS program. Mot. 22. The proposed order then identifies the ten documents that were not previously produced. *See* Opp. 18. While the USPTO maintains that the SAWS program is not germane to why Mr. Hyatt chose to pursue the prosecution approach he did, the instant MIL only seeks to exclude those SAWS-related exhibits that are untimely—i.e., the exhibits identified in the proposed order. Mr. Hyatt's position that SAWS somehow means that his conduct did not guarantee delay, Opp. 18, is unclear—how and why he approached prosecution is entirely unrelated to the SAWS program.[17] In any event, Mr. Hyatt's response does not change that he could have produced the SAWS-related exhibits earlier and did not do so.

### CONCLUSION

For the foregoing reasons, the USPTO respectfully requests that the Court exclude the exhibits not disclosed during discovery.

---

[17] Mr. Hyatt does not even attempt to use his vague allegation that the USPTO should have but did not produce SAWS-related documents to justify his delay, and so this complaint is irrelevant. *See* Opp. 9. For example, Mr. Hyatt does not contend that any of these new exhibits are newly discovered or could not have been produced in August 2021 or February 2023.

Dated: August 31, 2023                    Respectfully submitted,

                                          /s/ Peter J. Ayers
                                          SEAN M. TEPE
                                          Assistant United States Attorney
                                            (DC Bar #1001323)
                                          PETER J. AYERS
                                          Special Assistant United States Attorney
                                            (TX Bar #24009882)
                                          OMAR AMIN
                                          Special Assistant United States Attorney
                                            (DC Bar #1014502)
                                          KEVIN RICHARDS
                                          Special Assistant United States Attorney
                                            (VA Bar #87948)
                                          MICHAEL TYLER
                                          Special Assistant United States Attorney
                                            (DC Bar #977226)
                                          HUGHAM CHAN
                                          Special Assistant United States Attorney
                                            (DC Bar #4987897)
                                           U.S. DEPARTMENT OF JUSTICE
*OF COUNSEL:*                             CIVIL DIVISION
                                          555 Fourth Street, N.W.
THOMAS W. KRAUSE, SOLICITOR               Washington, DC 20530
JOHN FERMAN, ASSOCIATE SOLICITOR          (202) 252-2519 (phone)
UNITED STATES PATENT AND                  (202) 252-2599 (fax)
TRADEMARK OFFICE                          sean.tepe@usdoj.gov
OFFICE OF THE SOLICITOR                   peter.ayers1@uspto.gov
600 Dulany Street                         omar.amin@uspto.gov
Alexandria, VA  22314                     kevin.richards@uspto.gov
(571) 272-9035 (PHONE)                    michael.tyler@uspto.gov
(571) 273-0373 (FAX)                      Hugham.Chan@usdoj.gov
thomas.krause@uspto.gov
john.ferman@uspto.gov                     *Counsel for Defendant*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S NEWLY PRODUCED EVIDENCE** was filed with the Clerk of the Court via the Court's CM/ECF system. Counsel of record will be served through the Court's CM/ECF system.


Date: August 31, 2023                                   /s/ Peter J. Ayers
                                                        Peter J. Ayers

22